STATE OF IOWA *ex rel* ROYCE, *v.* H. B. WYMEN, Appellant.

**Construction of Statute:** MUNICIPAL ELECTIONS. An amendment to Code, section 509, provides that, thereafter, the mayor of cities of the second class shall have a term of two years, and that the first elections under the act shall be held on the first Monday of March, 1887. After this act became a law, a town became a city of said class just before the municipal election of an *even* numbered year. *Held,* the mayor then elected, holds for two years. While this act fixed the initial election in an odd numbered year, it does not restrict all municipal elections to such years.

*Appeal from O'Brien District Court.*—HON. SCOTT M. LADD, Judge.

THURSDAY, APRIL 9, 1886.

QUO WARRANTO to test the right of the defendant to hold the office of mayor of the city of Sheldon. Judgment for the relator, and the defendant appealed. —*Affirmed.*

*D. W. A. Perkins* for appellant.

*Boies & Roth* for appellee.

GRANGER, J.—The city of Sheldon became such, from an incorporated town, just prior to the municipal election in March, 1894; and at the election in that year the relator was duly elected to the office of mayor of the city. At the municipal election in March, 1895, the defendant was elected to that office, and has assumed the duties thereof; and this proceeding is to test his right to exercise such duties by virtue of said election. The cause was submitted on a stipulation of facts, and the following, included therein, indicates the contentions in the case: "That the contention of the parties hereto is: The relator contends that the said city being a city of the second class, that he was on March 5, 1894, elected mayor thereof for the full term of two years, and that his term of office does not expire until the regular city election in March, 1896. The connection on the part of defendant is: That mayors of cities of the second class in this state are to be elected in odd-numbered years, unless the first election under the new organization of a city, as a city of the second class, occurs in an even-numbered year, and then the mayor so elected in such even-numbered year, only holds his office for one year; and, consequently, the relator's term of office expired upon the qualification of the defendant, in March, 1895."

Section 509, of the Code, provides, that when an incorporated town is changed into a city of the second class, such city, "shall, at the next regular annual period for the election of municipal officers, proceed to organize according to its new grade, by the election of officers properly belonging thereto, and on their election and qualification the term of service of any former officer shall expire." Prior to 1886, mayors

of cities of the second class were elected annually.
The Twenty-first General Assembly, by chapter 141 of
its Acts, so changed the law as to have them elected
biennially, which is the law now in force. The
language of section 2, of the act, is as follows: "The
terms of office for the mayor, treasurer, assessor, and
solicitor, shall be two years, and the first election
under this act shall be held on the first Monday of
March, 1887." The act was passed in 1886, and took
effect July 4, of that year, and the first election was
fixed for the March following. There is no dispute
but that cities of the second class may be organized
so as to have their first election in the even-num-
bered year. That was done in this case. It is not
true, then, that all elections for mayors shall be held
in the odd-numbered years. The law nowhere con-
tains any language to expressly change or modify the
rule that mayors are to be elected biennially. The act
fixes the time for the first election in 1887. That
would control as to all such cities then in existence.
The law then permits other cities to come into exist-
ence, so that their first election will come in even-
numbered years. Others may so come into existence
after the year 1887, as their first election will come in
odd-numbered years. The biennial period is appli-
cable to all such cities, and no exception is made for
any purpose, nor on any account; and we do not see
why a second or third election in even-numbered
years is not as valid as the first, and we have no doubt
as to the legality of the first. We do not feel author-
ized to engraft on the law, by construction, a provis-
ion not expressed in it, that would in some respects
defeat its express provisions, by changing, in particu-
lar cases, the tenure of office. We think the holding
of the district court is right, and its judgment is
AFFIRMED.